**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**CANDACE D. H.,**

                              **Plaintiff,**                              **23-CV-147Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

---

## DECISION AND ORDER

            As set forth In the Standing Order of the Court regarding Social Security

Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have

consented to the assignment of this case to the undersigned to conduct all

proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

Dkt. #13.

## BACKGROUND

            Plaintiff applied for supplemental security income ("SSI"), benefits with the

Social Security Administration ("SSA"), on January 22, 2020, at the age of 21, alleging

disability beginning October 14, 2019 due to a rod and screws in her left leg; plates and

screws in her left elbow; back and neck issues; bipolar disorder; depression; anxiety;

post traumatic stress disorder ("PTSD"); anger problems; migraines; and asthma. Dkt.

#5, pp.89-90.

On December 30, 2021, plaintiff appeared with counsel and testified, along with an impartial vocational expert ("VE"), John Bopp, at an administrative hearing conducted by video conference before Administrative Law Judge ("ALJ"), Stephen Cordovani. Dkt. #5, pp.51-88.

Plaintiff testified that she lives in a bottom floor apartment with a friend who grocery shops, cooks and washes laundry for her. Dkt. #5, pp.56-57.  Before that, she lived with her mother. Dkt. #5, p.57. Plaintiff does not drive. Dkt. #5, p.75. Her friend will drive her when she needs to go somewhere, but plaintiff is scared in cars because of her prior car accidents. Dkt. #5, p.76. As a result of the car accidents, plaintiff has a rod in her left leg and plates and screws in her left elbow. Dkt. #5, pp.59 & 65. She has been trying to find a pain medication doctor who will take her insurance to address her back pain, which she described as her worst problem. Dkt. #5, p.64. Her left leg hurts every day and causes her to limp. Dkt. #5, p.65. She alternated sitting and standing throughout the hearing, explaining that she can only sit for 5-10 minutes before she needs to stand up, which she can only do for another 5-10 minutes. Dkt. #5, p.73. She cannot walk more than a block and takes stairs one step at a time. Dkt. #5, p.73. She can't stand up straight, bend over, or kneel. Dkt. #5, p.74. She can't lift more than 5 pounds or reach in any direction. Dkt. #5, pp.74-75. She spends most of every day in bed because she can't move due to pain. Dkt. #5, p.75.

Plaintiff has experienced migraines since she was a little girl, but they have gotten worse since her car accidents. Dkt. #5, p.66. She has them every day or

so. Dkt. #5, p.77. They can last for days and sometimes cause her to vomit. Dkt. #5, p.66. She has to lie down in a dark room until the migraine subsides. Dkt. #5, pp.66-67 & 80-81. She also experiences asthma. Dkt. #5, p.67. She has recently been referred to a rheumatologist. Dkt. #5, p.68. She has been back in counseling for more than a year and has been prescribed medication to address her bipolar disorder, anxiety, depression, anger and sleep disorder. Dkt. #5, p.69. Plaintiff explained that she likes being by herself and has never really been social. Dkt. #5, pp.69-70. Her mood can change out of nowhere. Dkt. #5, p.71. She is easily distracted and really sad and emotional. Dkt. #5, p.71. She does not leave the house more than a couple times a month because she does not like crowds and will start shaking. Dkt. #5, p.72.

When asked to assume an individual with plaintiff's age and education, with no past relevant work experience who was capable of light exertion and limited to occasional crouching, kneeling, ramps and stairs but no ladders, ropes or scaffolds and no loud noise exposure or concentrated exposure to fumes, odors, dusts, gases, poor ventilation or other respiratory irritants, who could understand, remember and carry out simple instructions and tasks, could not be subjected to more than minimal changes in work routine and processes, engage in supervisory duties, independent decision making, have more than occasional interaction with supervisors, coworkers and the general public or be responsible for strict production quotas, the VE testified that such an individual could work as a power screwdriver operator, a price marker, or a routing clerk, each of which were light exertion, unskilled positions. Dkt. #5, pp.83-84. The VE further opined that if such individual needed to frequently alternate sitting and standing

-3-

so that they were only able to stand or walk for 3-4 hours of the work day, that would eliminate most light exertion occupations, and if such individual were only able to sit for 3-4 hours of the work day, that would eliminate many of the sedentary occupations. Dkt. #5, pp.86-87. The VE opined that an individual off task more than 10% of the work day or absent more than once per month would be unemployable. Dkt. #5, p.87.

The ALJ rendered a decision that plaintiff was not disabled on February 1, 2022. Dkt. #5, pp.23-44. The Appeals Council denied review on December 14, 2022. Dkt. #5, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on February 15, 2023. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

-4-

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that she could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since the application date of February January 22, 2020; (2) plaintiff's asthma, obesity, remote history of left leg and left arm fracture, status post open reduction and internal fixation, migraine headaches, low back strain, unspecified bipolar disorder, major depressive disorder, post traumatic stress disorder and unspecified anxiety disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at the light exertion level but could not climb ladders, ropes or scaffolds and was limited to occasional crouching, kneeling, and climbing ramps or stairs, should avoid concentrated exposure to respiratory irritants and exposure to loud noises and was limited to work with no supervisory duties, independent decision-making or strict production quotas with minimal changes in work routine and processes and no more than occasional interaction with supervisors, co-workers and the general public; and (5) plaintiff was capable of working as a power screwdriver operator, price marker or routing clerk, , which are light exertion, unskilled positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #5, pp.28-43.

### Migraines

Plaintiff argues that the ALJ failed to adequately assess plaintiff's migraine headaches under the requirements for a primary headache disorder as set forth in SSR 19-4p. Dkt. #8-1, pp.21-27. Plaintiff argues that although her migraine symptoms suggest medical equivalence to listing 11.02, the ALJ failed to reference the listing or SSR-19-4p anywhere in his decision. Dkt. #8-1, p.22. Moreover, although her medical records are replete with complaints of migraines, plaintiff argues that the ALJ

failed to adequately explain his assessment of this severe impairment. Dkt. #8-1, pp.25-26. Plaintiff also argues that it was error for the ALJ to interpret plaintiff's MRIs and neurology treatment notes himself. Dkt. #8-1, p.26.

The Commissioner responds that plaintiff has not demonstrated that the severity of her headaches medically equaled any listing criteria or necessitated a more restrictive RFC. Dkt. #11-1, p.2. To the contrary, the Commissioner argues that the ALJ properly relied upon the opinion of the state agency consultant who considered listing 11.02. Dkt. #11-1, pp.9-13. The Commissioner also argues that the ALJ found persuasive the opinion of Dr. Dave, who recognized plaintiff's diagnosis of migraine headaches. Dkt. #11-1, p.16. Moreover, the Commissioner argues that it was reasonable for the ALJ to consider evidence in the record that plaintiff denied that her migraine symptoms interfered with her activities of daily living, as well as her lack of follow-up with a referral to a rheumatologist and for an elecrtomyography ("EMG"), as well as her reported improvement with medication, when assessing plaintiff's RFC. Dkt. #11-1, pp.13-17.

Plaintiff replies that her referral to a rheumatologist and for an EMG for unrelated issues is irrelevant, emphasizing that she was under the care of a neurologist for her headaches throughout the relevant time period. Dkt. #12, pp.2-3. Plaintiff further responds that there is no indication that Dr. Koenig actually considered listing 11.02 or how he assessed plaintiff's headache disorder nor is there any indication that the ALJ considered Dr. Koenig's opinion relevant to a determination of plaintiff's functional

limitations arising from her headaches. Dkt. #12, pp.3-4. Similarly, plaintiff replies that there is no indication that Dr. Dave's consultative opinion addressed the severity of plaintiff's headaches at all. Dkt. #12, pp.3-4.

Primary headache disorder, where headaches occur independently and are not caused by another medical condition, is not a listed impairment, but has been determined by the SSA to align most closely with listing 11.02 (Epilepsy). See SSR 19-4p, 2019 WL 4169635, at *7 (Aug. 26, 2019). To demonstrate equivalency with this listing, primary headaches must occur at least once a week for at least 3 consecutive months despite adherence to prescribed treatment or at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment and cause a marked limitation in one area of functioning, such as physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. *Id.* "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the SSA considers: detailed descriptions from an acceptable medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and

quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations). *Id.* If the primary headache disorder, alone, or in combination with another impairment, does not medically equal a listing, the SSA will consider the limiting effects of all impairments and any related symptoms when assessing the plaintiff's RFC. *Id.*

An ALJ is required to set forth a specific rationale in support of his determination at step three; a brief, conclusory statement that the plaintiff fails to meet a listing is insufficient. *Rodriguez v. Saul*, 2021 WL 738348, at *14 (S.D.N.Y. Feb. 25, 2021). "Remand is appropriate where there is insufficient uncontradicted evidence in the record to support the ALJ's step three conclusion and the ALJ fails to explain his rationale for why the plaintiff did not meet a listing." *McVicker v. Comm'r of Soc. Sec.*, 21-CV-7445, 2023 WL 2584206, at *9 (S.D.N.Y. March 21, 2023) (internal quotations omitted). However, the absence of an express rationale for an ALJ's conclusions at step three does not require reversal so long as the reviewing court is able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence. *Salmini v. Comm'r of Soc. Sec.*, 371 Fed. App'x 109, 112 (2d Cir. 2010). Thus, an "ALJ's step-three conclusion must be supported by substantial evidence and must be articulated elsewhere in the decision in a manner that permits a court to understand and review the ALJ's step-three conclusions for substantial evidence." *Santiago Ortiz v. Comm'r of Soc. Sec.*, 19-CV-538, 2020 WL 5792968, at *3 (W.D.N.Y. Sept. 29, 2020).

At step three of the sequential analysis, the ALJ recognized that there are no listings for migraines, and noted that he had considered any listings related to such impairment or a complication therefrom. Dkt. #5, p.30. The ALJ did not, however, include listing 11.02 within the listings considered at step three and there is no other mention of plaintiff's migraines within his discussion of whether plaintiff has an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Dkt. #5, pp.30-33.

At step four of the sequential analysis, the ALJ noted plaintiff's testimony that she "has a migraine every day" that "could last days at a time" and that she takes prescribed medication and "lies down in the dark when she has a migraine." Dkt. #5, p.34. The ALJ also noted medical records indicating that plaintiff "occasionally complained of daily headaches, occurring several times per month, and noted that these headaches were sometimes associated with nausea, blurred vision, difficulty sleeping, and memory problems." Dkt. #5, p.36. The ALJ further noted that plaintiff sometimes "acknowledged that her headaches did not interfere with her daily activities; however, other times she complained that her headaches interfered." Dkt. #5, p.36. The ALJ also indicated that MRIs of plaintiff's brain were "unremarkable other than a focal area of defect of the corpus callosum just prior to the splenium and in the undersurface of the splenium" and that plaintiff's "treating neurologist noted that he did not see any cognitive impairments during his examinations of the [plaintiff] and with a computerized brain check." Dkt. #5, p.37. The ALJ stated that plaintiff "acknowledged that her headaches were relieved with non-steroidal anti-inflammatory medications ("NSAIDS"), and that she

did not receive any injections or other specific therapies for her headaches. Dkt. #5, pp.39-40.

The ALJ's recitation fails to fully capture plaintiff's treatment with nuerologist Baljinder Singh, M.D. Plaintiff initially presented to Dr. Singh on February 14, 2020 for complaints of headaches over the past few months. Dkt. #5, p.824. Plaintiff reported that the headaches were severe, associated with blurred vision and sometimes associated with nausea. Dkt. #5, p.824. Dr. Singh diagnosed "severe migraine" and ordered an

> MRI of the brain because patient has multiple neurological symptoms. Start her on Topamax . . . send to opthalmologist for full funduscopic examination [as] she has some visual disturbance. She [has] difficulty sleeping at night . . . so I will send for sleep evaluation. Severe memory problem [-] will do the cognitive evaluation.

Dkt. #5, p.824. An MRI of plaintiff's brain on February 25, 2020 revealed abnormal appearance to the posterior body of the corpus callosum in the area of the splenium with a focal area of defect of the posterior body just proximal to the splenium and signal abnormality . . . along the undersurface of the splenium." Dkt. #5, p.827. Upon clinical examination and testing on March 13, 2020, Dr. Singh did not observe any cognitive impairment. Dkt. #5, p.822. On April 13, 2020, Dr. Singh noted that plaintiff's MRI was negative for acute changes, but indicated atrophy on the splenium of the posterior corpus callosum. Dkt. #5, p.949. Plaintiff reported that she had seen an ophthalmologist and her eye examination was within normal limts. Dkt. #5, p.949. She also reported that her headaches were improved with Topamax. Dkt. #5, p.949.

-11-

On August 12, 2020, plaintiff reported that she continued to experience headaches 2-3 times per week, accompanied by photophobia, phonophobia and occasional nausea. Dkt. #5, p.820. Dr. Singh increased plaintiff's dosage of Topamax and added Imitrex as an abortive medication. Dkt. #5, pp.820-821. Upon evaluation on September 23, 2020, plaintiff reported that "she started to get headache back again," prompting Dr. Singh to increase plaintiff's dosage of Topamax. Dkt. #5, p.818. Dr. Singh also referred plaintiff to a rheumatologist to evaluate an elevated Erythocyte Sedimentation Rate ("ESR"), which suggested inflammation, and also referred plaintiff for an EMG of both upper extremities in response to her complaints of pain in both hands. Dkt. #5, p.818.

On January 19, 2021, Dr. Singh reported that plaintiff continued with headaches 2-3 times per week

> accompanied by photophobia, phonophobia and occasional nausea.She is taking Topamax . . . without issue and her symptoms have improved on Topamax. She has tried Sumatriptan in the past without any relief of headaches, will trial Naratiptan, adverse effects discussed with patient. She continues with tingling in her hands, will schedule for EMG. [She] has not followed up with rheumatology, Repeat MRI Brain is due Feb 2021 to monitor corpus collosum lesion.

Dkt. #5, p.943. On May 24, 2021, plaintiff reported that she was experiencing a headache "all over her head." Dkt. #5, p.941. Dr. Singh did not observe temporal tenderness upon examination. Dkt. #5, p.941. Dr. Singh increased plaintiff's dosage of Topamax. Dkt. #5, p.942. An MRI of plaintiff's brain on July 22, 2021 revealed "stable subtle defect/thinning at the inferior margin of the posterior corpus callosum anterior to

the splenium that could be related to remote insult, but no associated acute changes, edema, or abnormal enhancement. Dkt. #5, p.936. Upon examination by Dr. Singh on August 6, 2021, plaintiff reported that she was still experiencing headaches. Dkt. #5, p.937. Dr. Singh continued plaintiff's prescription of Topamax, Imitrex and Naratriptan. Dkt. #5, p.938. Dr. Singh also noted that the EMG for plaintiff's complaints of neuropathy and follow up with rheumatology to evaluate plaintiff's elevated levels of inflammation remained outstanding. Dkt. #5, p.937.

In light of this evidence of record, which details multiple headaches per week over the course of eighteen months, with reports of blurred vision, nausea, light sensitivity, noise sensitivity, sleep disturbance, and memory issues despite treatment with multiple prescription medications, the ALJ's cursory references to plaintiff's headaches are insufficient. *See Crewe v. Comm'r of Soc. Sec*., 2019 WL 1856260, at *4 (W.D.N.Y. 2019) (medical equivalency may be found where plaintiff experiences migraine headaches despite treatment at least twice weekly that are accompanied by aura, alteration of awareness, severe pain, nausea and photophobia requiring rest in a quiet, dark room for relief). Moreover, the Court agrees with plaintiff that the ALJ failed to adequately explain the relevance of her failure to obtain an EMG for her complaints of hand pain or follow up with a rheumatologist regarding elevated markers of inflammation to the issue of medical equivalency to listing 11.02. The Court notes that the ALJ failed to acknowledge that plaintiff did follow up with Dr. Singh's recommendation for an MRI of her brain and an examination by an ophthalmologist.

-13-

While state agency reviewing consultant J. Koenig, M.D., noted plaintiff's reports of headaches and treatment with Dr. Singh and included listing 11.02 in his list of listings considered (Dkt. #5, p.117), there is no explanation set forth in his assessment that would indicate why plaintiff did not medically equal the listing and his recommended functional limitation to avoid concentrated exposure to noise (Dkt. #5, p.120), does not illuminate a rationale with respect to the issue of medical equivalency. Similarly, consulting examiner Nikita Dave, M.D., acknowledged plaintiff's report that she had been seeing neurologist Dr. Singh for a year for her chief complaint of headaches and that they had improved from daily to every two days with medication, were accompanied by nausea, photophobia, and sonophobia, could last for a few days at a time and required her to lie down in a dark, quiet room and take medication, prompting a diagnosis of headaches, but his medical source opinion is devoid of any discussion of this impairment. Dkt. #5, p.808. Although Dr. Dave did recommend environmental limitations to avoid smoke, dust, fumes, inhalants, chemicals, extremes of temperature, and humidity, those limitations specifically referenced plaintiff's diagnosis of asthma and/or COPD and there do not appear to be any recommended functional limitations pertaining to plaintiff's headaches. Dkt. #5, p.813. Thus, the ALJ's determination that Dr. Koenig's opinion was consistent with that of Dr. Dave is inapposite to plaintiff's argument that the ALJ's decision fails to provide a basis for denying plaintiff's application at step three. As the Court is unable to discern the rationale for the ALJ's determination that plaintiff's migraines do not equal listing 11.02, remand is required. *See McVicker*, 2023 WL 2584206 at *9 (ALJ's failure to explain why plaintiff does not meet the requirements of listing requires remand because his decision ignores evidence in the record that show

he could potentially meet these requirements); *Piper v. Comm'r of soc. Sec.,* 18-CV-1311, 2020 WL 4499530, at \*3 (W.D.N.Y. Aug. 4, 2020) (remand required where ALJ failed, *inter alia*, to explain how his RFC finding account for plaintiff's migraines).

Because the ALJ's evaluation at step three upon remand may affect the remaining steps in the sequential evaluation, the Court declines to address plaintiff's argument with respect to her mental RFC. *Santiago Ortiz,* 2020 WL 5792968, at \*8; *See Fambo v. Comm'r of Soc. Sec.*, 474 F. Supp.3d at 608-609 (declining to reach additional arguments where it has been determined that remand for further administrative proceedings are necessary).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted and the matter is remanded for further administrative proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #12), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**       **Buffalo, New York**
              **March 31, 2026**

                    **s/ H. Kenneth Schroeder, Jr.**
                    **H. KENNETH SCHROEDER, JR.**
                    **United States Magistrate Judge**